**NOT FOR PUBLICATION**                                             **CLOSED**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
:
DEKIDA Q. MANSFIELD                                  :
on behalf of Theartis Givens (Deceased),             :
                                                     :   Hon. Faith S. Hochberg
                    Plaintiff,                       :
                                                     :   Civil Action No. 11-2191
                                                     :
            v.                                       :   **OPINION & ORDER**
                                                     :
MICHAEL J. ASTRUE,                                   :   Dated: April 5, 2012
COMMISIONER OF SOCIAL SECURITY,                      :
                                                     :
                    Defendant.                       :
_____               :


**HOCHBERG, District Judge:**

　　This matter comes before the Court upon Plaintiff Theartis Givens's[1] motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

---

[1] Theartis Givens filed her complaint on April 18, 2011, however, she passed away on May 6, 2011 from a very brief and unrelated medical illness. On July 14, 2011, an Order was entered, permitting Dekida Q. Mansfield, Ms. Givens's daughter, to substitute herself as Plaintiff in this suit. For ease, Ms. Givens will be referred to as "Plaintiff" throughout this opinion.

I. BACKGROUND

    A.    **Plaintiff's Medical and Vocational History**

        1.   Vocational Background

Plaintiff was a 58-year-old female with a college education. (Tr. 20-21). She was an elementary school teacher at The North School system for twenty years. (Tr. 22). Plaintiff retired[2] with a pension. (*Id.*)

        2.   Medical History

Since July 2002, Plaintiff saw several doctors and, as a result, had an extensive medical history. (*See* Pl. Br. at 2-10) (listing the several doctors Plaintiff had seen).

In July 2002, Dr. Ramesh Kania, Plaintiff's primary care physician, diagnosed Plaintiff with "osteopenia of the spine at L2-L4 and of both femurs, with moderate risk of fracture." (Tr. 169). On January 1, 2003, Plaintiff's alleged disability commenced, although from October 2002 to November 2003, Dr. Kania's examinations did not report Plaintiff had suffered from any discomfort. (Tr. 160-63). On September 5, 2003, Plaintiff requested a psychiatric referral from Dr. Kania. (Tr. 161). Dr. Kania additionally diagnosed Plaintiff with "controlled hypertension, history of granulomatous lung disease on x-ray, and osteopenia on bone density scan."[3] (Tr. 161). In March 2007, Plaintiff filed for Disability Insurance Benefits ("DIB").

On May 29, 2007, the Social Security Administration referred Plaintiff to Dr. Alexander Hoffman. (Tr. 16; *see* Ex. 2F). In June 2007, Plaintiff saw three professionals, Drs. Yvonne Li, Alec Roy and Clara Castillo-Velez. (Tr. 184-209). Dr. Li opined that Plaintiff could

---

[2]  It is unclear from the record exactly when she retired.

[3]  A gap in the medical records exists from September 2003 to March 2007.

perform light work. (Tr. 189). Both Drs. Roy and Castillo-Velez noted that Plaintiff had no history of psychiatric treatment. (Tr. 185, 196-209). On June 26, 2007, Dr. Adekunkle Adeoti began treating Plaintiff and subsequently, Plaintiff had regular visits with Dr. Adeoti. (Tr. 304-10).

On October 14, 2007, it appears that Plaintiff went to the emergency room for pneumonia and left against the medical advice of the doctors. (Tr. 16; *see* Ex. 7F). After the Plaintiff's trip to the emergency room, she continued her regular visits with Dr. Adeoti. (Tr. 304-10). In addition to many of the doctors Plaintiff had seen, Plaintiff also saw Drs. Mark Dilger and Howard Horsley. (Tr. 258-74). Dr. Dilger opined that Plaintiff's major depression was not a severe impairment. (Tr. 258, 261, 266). Dr. Horsley additionally determined that Plaintiff's condition would unlikely change so drastically from June 2007 to February 2008. *Id.* (citing Tr. 272).

On March 9, 2008, Dr. Adeoti diagnosed Plaintiff with rheumatoid arthritis, however, Dr. Paolino saw Plaintiff in April 2009 and did not mention possible arthritis. (*Id.* at 15.).

**B. The Disability Standard and the ALJ's Decision**

1. <u>The Statutory Standard for a Finding of Disability.</u>

A person is technically disabled under the Social Security Act ("SSA") if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The SSA defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

A person will be considered disabled "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Finally, the SSA defines work that exists in the national economy as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A).

In determining disability claims, the commissioner applies a five-step procedure according to 20 C.F.R. §§ 404.1520, 416.920 and *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999).  The steps are explained as follows:

Step One: Substantial Gainful Activity.  The Commissioner first looks to a claimant's current employment situation and considers whether such employment constitutes substantial gainful activity.  Substantial here means the employment requires "significant physical [or] mental activities."  20 C.F.R. § 416.972.  Further, even part-time or inconsistent work can still be considered substantial.  *Id.*  Gainful work is "work activity that you do for pay or profit."  *Id.*  If the claimant is currently engaged in substantial gainful activity, he or she will not be found disabled and consideration of any medical condition is unnecessary.  20 C.F.R. § 416.920(b).

Step Two: Severe Impairment.  If the claimant is not engaged in substantial gainful activity, he or she must then demonstrate the existence of a severe impairment.  A "severe impairment" is an impairment "which significantly limits [the claimant's] physical or mental

capacity to perform basic work activities." 20 C.F.R. § 416.920(c).  If the claimant is unable to present a severe impairment, or combination of impairments considered severe, he or she will not be found disabled.  *Id.*

   Step Three: Listed Impairment.  If the claimant is able to demonstrate a severe impairment, the Commissioner next determines if the impairment meets or equals an impairment listed on the Listing of Impairments in 20 C.F.R. § 404, subpt. P, app. 1.  If the claimant has such an impairment, he or she is found disabled.  If not, the Commissioner proceeds to the fourth step.  20 C.F.R. § 416.920(d).

   Step Four: Residual Functioning Capacity (RFC).  In the fourth step, the Commissioner decides whether, despite his or her impairment, the claimant still possesses the Residual Functioning Capacity[4] ("RFC") to perform his or her past relevant work.  If so, the claimant is found not disabled and the inquiry is at an end.  If not, the Commissioner then proceeds to the fifth step.  20 C.F.R. § 416.920(e)-(f).

   Step Five: Other Work.  If the claimant is unable to perform his or her past work, the Commissioner considers the individual's RFC, age, education, and past work experience to determine if he or she is able to make an adjustment to other work.  If he or she cannot perform other work, the claimant is found disabled.  20 C.F.R. § 416.920(g).

   This five-step analysis has a shifting burden of proof.  *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  For the first four steps, the claimant bears the burden of persuasion.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the analysis reaches the fifth step, however, the Commissioner then bears the burden of proving that the

---

[4] Residual Functioning Capacity is the claimant's ability to work on a sustained basis despite his physical or mental limitations.  The RFC determination is not a decision as to whether a claimant is disabled, but it is used as the basis for determining the particular types of work a claimant may be able to perform despite his or her impairment(s).  *See* 20 C.F.R. § 416.945.

claimant is able to perform other work that is available in the national economy. *Id.* at 142. "The claimant is entitled to disability benefits only if he is not able to perform other work." *Id.* (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)).

    2.  <u>The ALJ's Decision</u>

Upon review of the entire record, the Administrative Law Judge, Leonard Olarsch, ("ALJ") proceeded through the five-step analysis as necessary. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2003. (Tr. 13). At step two, the ALJ determined that Plaintiff suffered from osteopenia/osteoarthritis, a severe impairment. (*Id.*). On the other hand, Plaintiff's mood disorder was found to be a non-severe impairment due to its minimal effect on Plaintiff's ability to perform basic activities. (*Id.*). At step three, the ALJ determined that the record does not support an assertion of an inability to ambulate effectively, as defined in section 1.00B2b and as a result, Plaintiff's impairment or combination of impairments did not meet or equal any of the listed impairments in 20 C.F.R. § 404, subpt. P, app. 1. (*Id.* at 14.).

At step four, the ALJ concluded that Plaintiff had the RFC to perform a full range of light work. (*Id.*). Subsequently, the ALJ found the Plaintiff was "not disabled" as she had the RFC to "perform her past relevant work as a teacher." (*Id.* at 17.).

  **C. Standard of Review**

This Court must review the ALJ's factual findings to determine whether the administrative record contains substantial evidence for such findings. 42 U.S.C.A. § 405(g); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Richardson v. Perales*, 402 U.S.

389, 401 (1971)).  If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record.  *Simmons v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).  "The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."  *Snee v. Sec. of Health and Human Srvcs.*, 660 F. Supp. 736, 739 (D.N.J. 1987) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

## II. DISCUSSION

### A. Review of Commissioner's Decision

Plaintiff alleges that the ALJ's conclusion is not supported by substantial evidence and he did not sufficiently articulate his reasoning or give adequate weight to the evidence.  Specifically, Plaintiff argues that:  (1) the ALJ erred in finding Plaintiff's rheumatological impairments non-severe; (2) the ALJ did not follow the "Treating Physician Rule"; (3) the ALJ did not properly consider Plaintiff's credibility; (4) the ALJ did not develop a full and fair record.  The Court will address each argument in turn.

1. <u>Whether the ALJ erred in finding Plaintiff's rheumatological impairments non-severe</u>

Plaintiff asserts that the ALJ did not "indicate if he [the ALJ] considered [her] . . . rheumatological conditions of rheumatoid arthritis and Lupus, which are well-documented in the record and were properly diagnosed by the treating physicians, Drs. Adeoti and Paolino . . . . Plaintiff was diagnosed with rheumatoid arthritis . . . as early as March 2008 (prior to her date last insured)." (Pl. Br. at 12-13) (citing Tr. 276).  Although Plaintiff alleges that rheumatoid arthritis and Lupus were "well-documented" and "properly diagnosed," the Social Security Act provides with particularity what a claimant must establish to show an impairment.  20 C.F.R

§ 404.1508. A "physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your [the claimant's] statement of symptoms." *Id.*; *see also* 20 C.F.R. § 404.1508. The ALJ found that Plaintiff's rheumatoid arthritis was non-severe for two reasons: (1) the record lacked medical evidence; and (2) Dr. Adeoti's credibility was entitled to lesser weight. First, Plaintiff did not meet or equal Listings 1.02A or 1.04. The record lacked medical evidence to show "an inability to ambulate effectively, as defined in section 1.00B2b or a significant disorder of the spine with evidence of nerve root compression, spinal arachnoiditis, or spinal stenosis." (Tr. 14). Without such documentation, Plaintiff did not meet her burden to establish the necessary medical evidence to prove she had a physical impairment. Next, the ALJ particularly discussed how Dr. Adeoti's diagnosis of rheumatoid arthritis was inconsistent with the record as a whole[5] and; therefore, his diagnosis warranted lesser weight. (*See* Tr. 16). Dr. Adeoti's credibility will be discussed in the next section.

In conclusion, the ALJ had substantial evidence to support his findings that Plaintiff's rheumatological impairments were non-severe.[6] (*See* Tr. 13-16).

2. Whether the ALJ failed to properly follow the "Treating Physician Rule"

Plaintiff contends that the ALJ did not follow the "Treating Physician Rule." (Pl. Br. at 14) (citing Tr. 276). The established rule is set forth as follows: "If . . . a treating source's

---

[5] The ALJ stated: "His [Dr. Adeoti's] opinion is at odds with the May 29, 2007 consultative examination findings, the claimant's statement of June 11, 2007 that she was not being treated for any major medical problem, and the fact that the claimant chose to leave the ER on October 14, 2007 against medical advice because she needed to go home." (Tr. 16) (citing Ex. 7F).

[6] Although Plaintiff alleges that the ALJ erred in not finding rheumatological impairments non-severe, the ALJ continued his analysis through the five-step process and thoroughly explained his reasoning for not finding rheumatological impairments non-severe. (Tr. 16; *see also supra*, n.5 (discussing the inconsistencies with Dr. Adeoti's findings and Plaintiff's testimony)).

8

opinion on the issue(s) of the nature and severity of [the] . . . impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the . . . record," then the opinion will have controlling weight.[7] 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ did not give Dr. Adeoti's opinion controlling weight. Instead, the ALJ determined that Dr. Adeoti's opinion "deserves lesser weight . . . based on the record as a whole." (Tr. 16). Specifically, the ALJ pointed to inconsistencies between Dr. Adeoti's opinion and the record.[8] (*Id.*). Plaintiff cites *Plummer v. Apfel* to assert that an ALJ must have contradictory evidence to reject a treating physician's opinion. (Pl. Br. at 15) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). *Plummer*, however, continues that an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Id.* (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)). The ALJ in *Plummer* afforded the claimant's treating physician's interrogatory responses lesser weight because the responses were inconsistent with the record as a whole. *Id.* at 430-31. The instant case is similar to *Plummer* because the ALJ did not *reject* Dr. Adeoti's opinion, but simply afforded it "lesser weight" and, therefore, the ALJ did not need contradictory evidence. (Tr. 16).

The Court therefore finds that the ALJ adequately explained why Dr. Adeoti's opinion was not afforded controlling weight and there is substantial evidence in the record to support this finding.

---

[7] When a treating source's opinion is not controlling, several factors including length and frequency of examination, nature and extent of relationship, supportability, consistency, specialization and other factors are analyzed to determine the weight of the opinion. 20 C.F.R. § 404.1527(d)(2)(i); 20 C.F.R. § 404.1527(d)(3) – (6).

[8] *See supra,* n.5.

9

3. <u>Whether the ALJ failed to properly evaluate Plaintiff's credibility</u>

Plaintiff argues that the ALJ did not properly consider Plaintiff's subjective account of her condition. In evaluating medically determinable impairments and the extent to which they limit one's capacity to work, the Commissioner is required to consider "all reasonable evidence . . . including statements from [the claimant]." 20 C.F.R. §§ 416.927(c), 404.1529(c). In addition, the Commissioner must consider the claimant's history, laboratory findings, statements from treating and non-treating sources, and treating and non-treating medical opinions. *Id.* Subjective complaints of symptoms and disability must be *substantiated* by medical evidence. 42 U.S.C. § 423(d); *Williams v. Sullivan*, 380 F. Supp. 2d 496, 508 (D.N.J. 2005).

Here, the record supports the ALJ's conclusion that Plaintiff's allegations "cannot be considered entirely credible." (Tr. 15). First, Plaintiff's allegations were not supported by medical evidence.[9] (Tr. 15). Second, Plaintiff was in the emergency room on October 14, 2007 and left contrary to medical advice, "which suggests that if she were as frail as she alleges, she would have elected to remain in the hospital." (*Id.* at 16.). Third, although not related specifically to her diagnosis, Plaintiff testified that she had alcohol and/or drug problems about ten years ago but during her 2007 visit to the emergency room, she tested positive for cocaine and opioids. (*Id.* at 15.). Finally, the ALJ found that Plaintiff's reason for retiring was statedinconsistently by her. "Dr. Dilger, a nonexamining state agency medical consultation, noted that the claimant told the consultative examiner that she retired from her job as a teacher,

---

[9] For example, Plaintiff "testified that she cannot work because both of her legs and ankles swell up, she has pain and stiffness in her hand, she is unable to walk, and she is unable to bend over for any length of time." (Tr. 15). Plaintiff also "stated that she can lift a gallon of milk, walk for about 15 minutes before she has to stop due to shortness of breath, and sit for about 15 to 20 minutes. . . .[however] the medical evidence in the record *does not support* the claimant's alleged limitations." (*Id.*).

which is inconsistent with her statement that she could not function as the job required." (*Id.* at 16; *see also* Ex. 14F.).  Overall, the ALJ did take into consideration Plaintiff's subjective evidence;  however, the record demonstrated inconsistencies, which resulted in the ALJ determining that Plaintiff's testimony was not entirely credible.

      4.  <u>Whether the ALJ developed a full and fair record</u>

Plaintiff contends in her reply brief that the ALJ did not properly develop a "full and fair" record.  (Pl. Reply Br. at 2.).  The Third Circuit, in *Fargnoli v. Halter*, explained: "Although we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant, . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."  *Fargnoli v. Halter,* 247 F.3d 34, 42 (3d Cir. 2001).

*Burnett v. Commissioner of Social Security* requires the ALJ "to set forth the reasons for his decision."  *Burnett v. Comm'r of Social Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000).  As the Third Circuit explained, "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.  In the instant case, the ALJ, as the fact finder, examined Plaintiff's voluminous medical records.  Throughout the ALJ's opinion, the ALJ addressed, with particularity, the rationale for his ruling with specific references to the record.  (*See generally* Tr. 11-17).

Additionally, the "ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record."  *Reefer v. Comm'r of Social Sec.*, 326 F.3d 376, 380 (3d Cir. 2003).  In *Reefer v. Comm'r of Social Sec.*, the Third Circuit held that the ALJ did not develop a full and fair record. *Id.*  The Third Circuit found that the ALJ's procedures were inadequate when the

11

ALJ did not request medical records that could support the claimant's testimony regarding a stroke. *Id.* It was crucial for the ALJ to help fully develop the record in *Reefer* because the claimant was unrepresented. *Id.*

Unlike *Reefer* where the claimant was *pro se*, Plaintiff, in the present case, was represented by an attorney. Moreover, the ALJ *did request* specific medical records from Plaintiff's doctor.[10] (*See* Ex. 8E.). The ALJ does not owe a special duty to Plaintiff that goes beyond requesting documents, which he did, because Plaintiff was represented by counsel. In conclusion, the ALJ developed a full and fair record that allowed him to meaningfully review Plaintiff's claim and there is substantial evidence in the record to support his findings.

### III. CONCLUSION & ORDER

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that the ALJ's conclusion that Plaintiff is not disabled is based on substantial evidence in the record. Accordingly, this Court **AFFIRMS** the Commissioner's decision to deny Plaintiff Social Security Benefits.

Therefore, **IT IS** on this 5th day of April, 2012, hereby

**ORDERED** that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

**s/ Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.

---

[10] Exhibit 8E reflects contact with Dr. Adeoti's office. It appears that Dr. Adeoti's office, however, ignored the request for treatment notes since they do not appear in the record. (Ex. 8E.). Further, even if the ALJ had these notes, they would not be dispositive, as Dr. Adeoti's opinion is not controlling or fully supported in the record.